STATE EX REL. DANAHER, APPELLANT, v. MILLER, REGISTER
OF STATE LANDS, ET AL., RESPONDENTS.

(No. 3,879.)

(Submitted September 18, 1916. Decided October 9, 1916.)

[160 Pac. 513.]

*Mandamus—State Lands—Control and Disposition—Statutes—
Purchaser's Bond—Certificate of Purchase—Fraud—Principal
and Agent—Ratification.*

State Lands—Control and Disposition of—Statutes Applicable.
  1. *Held,* that Chapter 147, Laws of 1909, supersedes all prior and
  existing statutes having to do with the control and disposition of state
  lands.

Same—Purchaser's Bond—Not Required.
  2. A purchaser of state lands is not required to give bond to secure
  deferred payments of the purchase price.

Same—Certificate of Purchase—Duty of Governor—*Mandamus.*
  3. *Mandamus* lies to compel the governor, as president of the state
  board of land commissioners, to sign a certificate of purchase of state
  lands, his duty in this respect being a purely ministerial one.

  [As to whether *mandamus* lies against governors, see notes in
  33 Am. Dec. 361; 31 Am. St. Rep. 294.]

Same—Sale—Fraud—*Mandamus*—Jurisdiction.
  4. The formal approval by the state board of land commissioners of
  a sale of state lands did not conclude the district court from investigat-
  ing, in a proceeding to compel by *mandamus* the issuance of a certificate
  of purchase, the question of fraud claimed to have entered into the sale.

Same—Fraud—*Mandamus*—Discretion.
  5. *Mandamus* is not a writ of right, but issues only in the discretion
  of the court; hence where it is made to appear that with reference to
  the very question at issue the conduct of the party asking for the writ
  has been tainted with fraud or such as to render the granting of it
  inequitable, the relief may be refused.

Same—Fraud—Principal and Agent—Ratification.
  6. Under the rule that ratification of an unauthorized act has the effect
  of a prior authorization, *held* that a purchaser of state lands who, in-
  stead of repudiating her husband's conduct in stifling competition
  at the sale, with knowledge thereof, endeavored to compel transfer of
  the land to her, ratified his act and became bound by it.

Same—Fraud as to Part of Transaction—Effect.
  7. Where two parcels of state lands were sold to the same person
  at the same sale, but separately as required by law, and fraud entered
  into the sale of one only, the buyer was entitled to a certificate of
  purchase for the tract free from the taint of wrongdoing, and was prop-
  erly denied relief as to the other.

*Appeal from District Court, Lewis and Clark County; J. M.
Clements, Judge.*

PROCEEDING in *mandamus* by the State on the relation of Mary M. Danaher against Sidney Miller, as register of state lands, and S. V. Stewart, as president of the State Board of Land Commissioners. Judgment for defendants. Relatrix appeals from the judgment and an order denying a new trial. Remanded with directions.

*Messrs. Wight & Pew,* for Appellant, submitted a brief, *Mr. Chas. E. Pew* argued the cause orally.

Respondents argue that the governor cannot be *mandamused* even to perform a ministerial duty. . That this argument is unsound has been settled in this state ever since the decision in the case of *Chumasero* v. *Potts,* 2 Mont. 242. (*State* v. *Rickards,* 16 Mont. 145, 50 Am. St. Rep. 476, 28 L. R. A. 298, 40 Pac. 210; *State* v. *Smith,* 23 Mont. 44, 57 Pac. 449.) See, also, *Greenwood Cemetery Land Co.* v. *Routt,* 17 Colo. 156, 31 Am. St. Rep. 284, 15˙ L. R. A. 369,. 28 Pac. 1125, a case on all-fours with the one at bar.

When the board has acted, its orders are final. Upon all questions of fact its findings are final, and not open to question in any other forum. In this respect the powers of the board are analagous to those of the Department of the Interior; and the rule is firmly settled that the findings of that department are final and conclusive upon all questions of fact. (*Small* v. *Rakestraw,* 28 Mont. 413, 104 Am. St. Rep. 691, 72 Pac. 746; *Love* v. *Flahive,* 33 Mont. 348, 83 Pac. 882.) True, the rule is stated with the qualification "in the absence of fraud." That exception applies only to fraud practiced upon the department, and not to alleged fraud which was the subject of inquiry before the department. (*Shepley* v. *Cowan,* 91 U. S. 340, 23 L. Ed. 424.)

Fraud is a question of fact; and in the absence of a contrary showing the presumption is that every matter affecting the sale was before and passed upon by the board, including the facts upon which the alleged fraud is predicated. The sale being ap- ·

proved, it is presumed that the board decided that no fraud was shown.

Neither the governor nor the register could go back of the records of the land board, which show a regular sale and a regular approval by the board, leaving nothing to be done but to prepare, sign and deliver the certificate authorized and directed to be prepared and signed by those officers, as ministers of the state land department, as evidence of the fact that a sale had been made, the terms upon which it had been made, and the person to whom the land had been struck off. (*Stearns* v. *State,* 23 Okl. 462, 100 Pac. 909.)

The rights of appellant cannot be affected by the alleged fraud of strangers.

That such an arrangement as that between Thomas Danaher and I. Y. Wood is not fraudulent, especially in the case of a sale such as the one under consideration, is illustrated by the decision in the case of *Piatt* v. *Oliver,* 1 McLean, 295, Fed. Cas. No. 11,114; s. c., 3 How. (U. S ) 411, 11 L. Ed. 658. In the case at bar, the most that could possibly be said to have been shown at the hearing, as to any combination, was that I. Y. Wood and Thomas Danaher formed a limited partnership for the special purpose of buying the southwest quarter of section 16; but even as to this, no testimony whatever has been introduced connecting Mrs. Danaher with the transaction.

*Mr. Wellington D. Rankin,* for Respondents, submitted a brief and argued the cause orally.

The petition does not aver sufficient facts to entitle appellant to any relief because the governor's acts in signing the certificate are discretionary, and therefore not subject to control by *mandamus.* In *State* v. *Smith,* 23 Mont. 44, 49, 57 Pac. 449, the court held that the performance of a discretionary duty of the governor could not be compelled by the courts. (See, also, *United States* v. *Windom,* 137 U. S. 636, 34 L. Ed. 811, 11 Sup. Ct. Rep. 197; *State ex rel. Gravely* v. *Stewart,* 48 Mont. 347, 137 Pac. 854; Mechem on Public Officers, sec. 954.) If the act

of the governor in signing a certificate of purchase is one involving a discretion, it does not become material what reasons are assigned, or whether any reasons exist for not doing so.

Any agreement the purpose of which is to prevent fair competition in bidding at a public sale of state lands is contrary to public policy and vitiates the sale. (*Jenkins* v. *Frink*, 30 Cal. 586, 89 Am. Dec. 134.) An agreement not to bid for the purpose of paralyzing competition is a fraud upon the vendor and vitiates the sale. (*Loyd* v. *Malone*, 23 Ill. 43, 74 Am. Dec. 179; *Smith* v. *Greenlee*, 2 Dev. L. (N. C.) 126, 18 Am. Dec. 564; *Farr* v. *Sims*, Rich. Eq. Cas. (S. C.) 122, 24 Am. Dec. 398; *Kearney* v. *Taylor*, 15 How. (U. S.) 494, 14 L. Ed. 798; *James* v. *Fulcord*, 5 Tex. 512, 55 Am. Dec. 743; *Pike* v. *Balch*, 38 Me. 302, 61 Am. Dec. 248.)

The courts will not compel the performance of a useless or an illegal act. A sale at which competition was prevented was not a public sale within the meaning of this provision. For this reason the sale would be void. (*Kearney* v. *Taylor, supra.*) The sale being void *ab initio*, a certificate, if issued and signed, would be a mere nullity. The writ should never be granted to compel an illegal act or to aid a relator who is not entitled to relief. (*Sherwood* v. *Rynearson*, 141 Mich. 92, 104 N. W. 392; High on Extraordinary Legal Remedies, sec. 40; *State ex rel. Waitt* v. *Hill*, 32 Minn. 275, 20 N. W. 196; 13 Ency. Pl. & Pr. 496; 19 Am. & Eng. Ency. of Law, 2d ed., 725–730.) Where it is apparent to the court to which an application for *mandamus* is made that the relator has been at fault, it is within the discretion of the court to deny the application. (13 Ency. Pl. & Pr. 499; *Sherwood* v. *Rynearson, supra.*) Or where the conduct of the relator has been such as to render it inequitable to grant the relief sought, the court may, in the exercise of its discretion, refuse the writ. (*People* v. *Jeroloman*, 139 N. Y. 14, 34 N. E. 726.)

Mr. Danaher, in stifling the bidding, was acting as the duly authorized agent of his wife, the relatrix. (*Bankard* v. *Shaw*, 199 Pa. St. 623, 49 Atl. 230; *Puget Sound Lumber Co.* v. *Krug*,

89 Cal. 237, 26 Pac. 902; 21 Cyc. 1419.) The relatrix ratified the fraudulent acts of her husband and wishes to profit by the same. This is manifested by her conduct in bringing this action. (1 Mechem on Agency, sec. 477; *Whiting* v. *Doughton*, 31 Wash. 327, 71 Pac. 1027; *Warder, Bushnell, Glessner Co.* v. *Cuthbert*, 99 Iowa, 681, 68 N. W. 917; *American Express Co.* v. *Lankford*, 2 Ind. Ter. 18, 46 S. W. 183.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

At a sale of state lands held in Helena, the west half of section 16, township 14 north, range 9 west, was offered for sale in two separate parcels of 160 acres each. Mary M. Danaher was the only bidder for either parcel and was declared to be the purchaser of each at $10 per acre. She paid over to the register of state lands the first installment required by law, and thereafter at a regular meeting of the state board of land commissioners these sales were approved. The governor, as president of the board, and the register refused to issue a certificate of purchase to Mrs. Danaher, and this proceeding in *mandamus* was instituted.

The officers interpose as a defense that Thomas Danaher, husband and agent of Mrs. Danaher, conspired with one I. Y. Wood to prevent competitive bidding for the land; that the conspiracy was carried into effect, by reason whereof the state will be defrauded if the relief sought is granted. The trial developed these facts: Mrs. Danaher desired to purchase the entire half section. Wood desired to secure the southwest quarter and came to the sale prepared to bid as much as $13 per acre, if necessary. Just before the sale commenced, Thomas Danaher and Wood agreed that one of them should bid in this quarter-section and that the two should then toss a coin to determine which one should get it. Immediately after the register had declared the two tracts sold to Mrs. Danaher, Thomas Danaher turned to Wood and offered him $150 for his chance, and, the offer having been accepted, Mrs. Danaher drew her check in

favor of Wood for the amount and delivered it to him. She had knowledge of the terms of the agreement at the time she paid over the money or immediately thereafter. The trial court dismissed the proceeding, and from the judgment of dismissal and from an order denying a new trial relatrix appealed.

1. The statutes relating to the management and disposition [1] of the state lands were found in the Political Code of 1895 and the amendments thereto, until the Act of March 19, 1909 (Laws 1909, Chap. 147), became effective. This later Act appears to have been intended, not as a supplement to existing laws, but as a complete code of laws upon the subject— Control and Disposition of State Lands. It revises the whole subject matter of the earlier statutes and repeals all Acts and parts of Acts in conflict with it. In our opinion it superseded all prior and existing statutes which had to do with the same subject.

2. It is insisted that relatrix fails to state a cause of action, [2] in that she fails to allege that she gave or tendered a bond to secure the deferred payments. While sections 41, 43 and 45 of the new Act refer to the purchaser's bond, the Act itself does not anywhere require a purchaser to give bond to secure the deferred payments. The failure to make such requirement may have been the result of oversight, but even so, the courts are not authorized to supply the deficiency if one exists.

3. Section 43 provides that a purchaser shall be entitled to a [3] certificate of purchase, which certificate "shall be signed by the governor as the president of the state board of land commissioners and by the register." In signing such certificate the governor performs a mere ministerial duty, and if he fails or refuses to perform such duty when he should perform it, *mandamus* will lie to compel performance. (*Chumasero* v. *Potts,* 2 Mont. 242.)

4. The trial court was not precluded from investigating the [4] question of fraud raised by the pleadings. That the formal approval of a sale by the state board was not intended to be conclusive, even upon questions of fact, is manifested by the

further provision in section 48 that the board may cancel a certificate for fraud at any time within three years from its date of issue.

It is to be borne in mind further, that *mandamus* is not a writ [5] of right. It issues only in the discretion of the court (*State ex rel. Donovan* v. *Barrett*, 30 Mont. 203, 81 Pac. 349; *State ex rel. Bailey* v. *Edwards*, 40 Mont. 313, 106 Pac. 703) ; and when it is made to appear that with reference to the very question at issue, the conduct of the party applying for the writ has been such as to render it inequitable to grant it, the relief may be refused. (*People ex rel. Durand L. I. Co.* v. *Jeroloman*, 139 N. Y. 14, 34 N. E. 726.)   Courts are not created to aid in the perpetration of fraud.

5. Is relatrix bound by the acts of Thomas Danaher?   Whether [6] Thomas Danaher was the duly authorized agent of his wife at the time he entered into the agreement with Wood is of no moment here.   The agreement was made for the benefit of Mrs. Danaher, and, conceding that she was not bound by it at the time and that she might have repudiated it when she became aware of its terms and conditions, yet she failed to exercise such right, but, on the contrary, has ever since insisted that the courts should aid her to profit by it.   She ratified her husband's act, which has the effect of a prior authorization. (Rev. Codes, sec. 5422.)   The agreement was unlawful, and to permit it to be carried into effect would result in a fraud upon the state.   (6 Corpus Juris, 830.)   "All sales of state lands shall be at public auction" (sec. 38, Act 1909), and this means a sale to the highest and best bidder with absolute freedom for competitive bidding.   Any agreement, therefore, to stifle competition or chill the bidding is a fraud upon the principle upon which the sale is founded.   (4 Cyc. 1044, and cases cited.)

The transaction before us bears no resemblance to an agreement between two *bona fide* prospective bidders to combine their means for the purchase of property to be divided between them. It was intended to stifle competition in bidding and had that

effect. The relatrix has no standing in a court to insist upon a right to, or interest in, the southwest quarter.

If the purchase of the entire west half had constituted one [7] transaction, the fraud would have permeated the whole transaction; but each quarter-section was sold as a distinct entity as the law requires. There were two sales, and so far as this record discloses, the purchase of the northwest quarter was free from any taint of wrongdoing. The relatrix appears to have established her right to a certificate of purchase for that parcel, and should have been granted relief to that extent.

A new trial is unnecessary, and the order denying one will be affirmed. The cause is remanded to the district court with directions to grant the relatrix relief to the extent herein indicated.

MR. JUSTICE SANNER concurs.

MR. CHIEF JUSTICE BRANTLY, being absent, takes no part in the foregoing decision.

